UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AL and PO CORPORATION, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 14 C 1905 |
| AMERICAN HEALTHCARE CAPITAL, INC., a California corporation, and JACK ESKENAZI, an individual, ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff AL & PO Corporation brings this putative class-action against Defendants American Healthcare Capital ("AHC") and Jack J. Eskenazi, AHC's senior vice president, for allegedly violating the Telephone Consumer Protection Act by sending unsolicited fax advertisements without the proper opt-out notices. Defendants move to transfer [33] this action to the Central District of California pursuant to 28 U.S.C. §1404(a). For the reasons explained here, the motion is denied.

## BACKGROUND

Plaintiff is an Illinois corporation with its principal place of business in Cook County, Illinois. (First Am. Class Action Compl. [13], hereinafter "FAC," ¶ 7.) AHC is a California Corporation that offers "mergers and acquisitions advisory products," with its principal place of business in Los Angeles County, California. (FAC ¶¶ 1, 8.) Eskenazi, the founder and senior vice president of AHC, is domiciled in Los Angeles County, California. (FAC ¶¶ 9–10.)

Plaintiff received two unsolicited faxes, one on September 13, 2013 and a second on December 9, 2013, each advertising a free valuation to be performed by AHC. (FAC ¶¶ 11–12, 15.) Fax advertising shifts the cost of marketing promotion to the recipient of the fax, in this case Plaintiff. (FAC ¶ 1.) Plaintiff alleges that because the faxes were unsolicited and Plaintiff

never consented to receive them, the faxes violated the Telephone Consumer Protection Act ("TCPA"). (FAC ¶¶ 2, 40) (citing 47 U.S.C. § 227.) The opt-out notices on these faxes, Plaintiff continues, do not satisfy TCPA requirements. (FAC ¶¶ 13–14, 44.) AL & PO alleges that Eskenazi personally organized and approved AHC's campaign of unsolicited faxes. (FAC ¶ 22.) According to Eskenazi, it is AHC's general manager, Jan Bustamante, who "implement[s] AHC's fax programs, and . . . manage[s] the vendors AHC uses to send faxes." (Decl. of Jack Eskenazi in Supp. of Defs.' Mot. to Transfer Venue, Ex. 1 to Defs.' Mem. of Law in Supp. of Defs.' Mot. to Transfer [34-1], hereinafter "Eskenazi Decl.," ¶ 8.)

Plaintiff brings this class action proposing to represent two nationwide classes. The first, named the "Unsolicited Fax Class," is defined as "[a]ll individuals or entities in the United States who received one or more unsolicited facsimile advertisements from or on behalf of Defendant American Healthcare Capital." (FAC ¶ 29.) The second proposed class, the "Opt-out Notice Class," overlaps with the first class: It includes "[a]ll individuals or entities in the United States who received one or more facsimile advertisements from or on behalf of Defendant American Healthcare Capital," including solicited and unsolicited faxes, "with opt-out notices that do not comply with 47 U.S.C. § 227(b)(2)(D)." (FAC ¶ 30.)

Defendants contend that the Central District of California is a more convenient forum for the resolution of this case because all of Defendants' documents and witnesses are located in Los Angeles. (Defs.' Mem. of Law in Supp. of Mot. to Transfer [34], hereinafter "Defs.' Mem.," 4–8.) They move to transfer this case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). (Defs.' Mot. to Transfer Venue [33].)

## DISCUSSION

"Recognizing that what is convenient for one litigant may not be convenient for the other, the Supreme Court has taught that section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to a case-by-case consideration of convenience and fairness." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626

F.3d 973, 977 (7th Cir. 2010) (quoting *Stewart Organization, Inc. v. Richo Corp.*, 487 U.S. 22, 29 (1988)) (internal quotations and alterations omitted). The moving party bears the burden of demonstrating that a transfer is warranted. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). A transfer under § 1404(a) is appropriate if: (1) venue is proper in both the transferor and transferee court; (2) transfer serves the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. *Vandeveld v. Christoph,* 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). The parties agree that venue is proper in both the transferee and the transferor court. (Defs.' Mem. at 2; Pl.'s Opp. to Defs.' Mot. to Transfer Venue [44], hereinafter "Pl.'s Mem.," 2, n.1.). The court therefore weighs only the remaining two factors: convenience and the interests of justice. The court concludes that transfer to the Central District of California would merely shift inconvenience from Defendants to Plaintiff, and the interests of justice do not persuade the court that transfer is appropriate.

**I.  Convenience**

When evaluating the relative convenience of the transferee and the transferor courts, the court weighs (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of witnesses. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer. *Id.* "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed" on the basis of convenience. *In re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 664 (7th Cir. 2003); *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219–20 (7th Cir. 1986) ("The movant bears "the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient."). The court addresses these elements individually below.

**A.  Plaintiff's Choice of Forum**

A plaintiff's chosen forum is entitled to substantial deference, particularly where, as Iin this case, the chosen forum is the plaintiff's home forum. *Law Bulletin Pub., Co. v. LRP Publications, Inc.,* 992 F. Supp. 1014, 1017 (N.D. Ill. 1998). *See also Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,* 134 S. Ct. 568, 581 (2013) ("Because plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), we have termed their selection the 'plaintiff's venue privilege.'") Several courts in this district have discounted this deference in putative nationwide class actions, reasoning that any member of the class who subsequently chooses to appear might be inconvenienced. *See Humphrey v. United Healthcare Servs., Inc.*, No. 14-cv-1157, 2014 WL 3511498, *3 (N.D. Ill. July 16, 2014) (Ellis, J.); *Lafleur v. Dollar Tree Stores, Inc.*, No. 1:11-cv-8473, 2012 WL 2280090, *3 (N.D. Ill. June 18, 2012) (Aspen, J.); *Nero v. Am. Family Mut. Ins. Co.*, No. 11-cv-1072, 2011 WL 2938138, *2 (N.D. Ill. July 19, 2011) (Feinerman, J.); *Ashland Jewelers, Inc. v. NTR Metals, LLC*, No. 10-cv-4690, 2011 WL 1303214, *7 (N.D. Ill. Mar. 31, 2011) (Hart, J.); *Simonoff v. Kaplan, Inc.*, No. 09-cv-5017, 2010 WL 1195855, *1 (N.D. Ill. Mar. 17, 2010) (Hibbler, J.); *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) (Denlow, M.J.); *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 857 (N.D. Ill. 2007) (Bucklo, J.); *Morris v. Am. Bioscience, Inc.*, No. 03-cv-7525, 2004 WL 2496496, *2 (N.D. Ill. Nov. 3, 2004) (Guzman, J.). *See also In re Warrick*, 70 F.3d 736, 741 n.7 (2nd Cir. 1995) ("It is true . . . that the plaintiff's choice of forum is a less significant consideration in a (here, putative) class action than in an individual action.").

Plaintiff seeks class certification of two nationwide classes (Pl.'s First Am. Mot. for Class Certification [14]), and Defendants urge this court to similarly discount Plaintiff's choice. The court is hesitant to adopt this approach. First, the Seventh Circuit has not endorsed this reasoning. Second, though Plaintiff has proposed nationwide classes, the class certification motion has not been briefed, and the court does not assume such a broad class will in fact ultimately be certified. In any event, unnamed class members presumably benefit from a class

4

representative who is able to aggressively litigate their claims without significant inconvenience due to travel. Though the court acknowledges that potential class members could be inconvenienced by litigation in the Northern District of Illinois, that inconvenience to potential parties does not, at this stage, outweigh the "plaintiff's venue privilege."

### B. The Situs of Material Events

Courts must also evaluate whether a lawsuit has any material relationship to the district in which it is brought. *See Research Automation*, 626 F.3d at 978. Plaintiff complains that it received unsolicited faxes, and urges that because the injury occurred in Illinois, this factor favors the Northern District of Illinois. (Pl.'s Mem. at 9–10.) Defendants urge that this factor favors transfer because their business practices and decision-making all occurred in California. (Defs.' Mem. at 12.) Defendants highlight Plaintiff's allegations that Eskenazi "personally approved, authorized, and participated in the transmission of the faxes by: (a) ordering a list of potential customers fax numbers to be purchased or compiled; (b) instructing or overseeing AHC employees or third parties who sent the faxes; and (c) developing or approving AHC's fax marketing campaign." (Am. Compl. ¶ 22.) In this case, the injury and the decision-making are both material events. *See, e.g., Sojka v. DirectBuy, Inc.,* No. 12-cv-9809, 2014 WL 1089072, at *2 (N.D. Ill. Mar. 18, 2014) (In a TCPA case, "the situs of the material events is not just . . . where [defendant's] decisions were made, but also where the calls and texts were received.") Thus, the situs of material events is not concentrated in either Illinois or California and this factor is neutral.

### C. The Relative Ease of Access to Sources of Proof

The third factor, ease of access to sources of proof, has little weight. Other than testimonial evidence, much of the relevant evidence will consist of documents such as the faxes themselves and the compilation of fax numbers. The "ready availability of photocopying and the relative ease with which documents may be selectively shipped around the country" renders this consideration insignificant. *Shakir Dev. & Const., LLC v. Flaherty & Collins Const., Inc.*, No. 11-

5

cv-1116, 2011 WL 2470887, *2 (N.D. Ill. June 21, 2011) (quoting *Morris*, 2004 WL 2496496 at *3). *See also In re Hudson*, 710 F.3d 716, 719 (7th Cir. 2013) (noting that changes of venue motivated by travel inconvenience should be infrequent because "[t]oday documents can be scanned and transmitted by email.").

  **D. The Convenience of the Parties**

Each party alleges that it will be significantly inconvenienced if the case proceeds in the alternate venue. AHC claims that it is a small business that would suffer substantial losses in productivity if its key management employees were required to travel to Illinois to testify. (Defs.' Mem. at 6.) AL & PO likewise asserts that, as a small company, it would similarly suffer due to travel to California. (Pl.'s Mem. at 6.) "When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003). As between AL & PO and AHC, the court concludes that the inconvenience of having employees travel is comparable.

Defendant Eskenazi, who is 73 years old, has been diagnosed with a "heart condition," and "must regularly see [his] doctor, who is located in Los Angeles, to monitor [his] condition." (Eskenazi Decl. ¶ 11.) Specifically, Mr. Eskenazi suffers from atrial fibrillation, has undergone an angioplasty procedure to widen blocked arteries, and may require additional procedures in the future at unpredictable times. (Defs.' Reply in Supp. of Defs.' Mot. to Transfer Venue [45], hereinafter "Defs.' Reply," 6–7.) Plaintiff responds that Eskenazi would be able to receive care in Chicago, should he need it, or in the event that health concerns completely prohibit travel, accommodations could be made, such as video depositions or testimony via live video feed. (Pl.'s Mem. at 7–8.) The court notes that the Seventh Circuit has recently suggested that courts should discount concerns based solely on the difficulties of travel:

6

> In our age of advanced electronic communication, including high-quality videoconferencing, changes of venue motivated by concerns with travel inconvenience should be fewer than in the past. Today . . . witnesses can be deposed, examined, and cross-examined remotely and their videotaped testimony shown at trial.

*In re Hudson*, 710 F.3d at 719. In this case, if Defendants' motion is denied, any trial would be conducted in the Northern District of Illinois, but Defendants would be deposed in their home jurisdiction, minimizing the inconvenience of travel. Mr. Eskenazi's health condition is thus entitled to some weight, but is not dispositive. California appears to be a moderately more convenient forum due to health concerns.

### E. Convenience of the Witnesses

Illinois courts "view [the] convenience of witnesses as a prime factor in determining transfer." *Morris*, 2004 WL 2496496 at *9-11. But the convenience of witnesses who are within a party's control, such as a party's employees, is far less important than the convenience of non-party witnesses. *Simonian v. Hunter Fan Co., No.* 10-cv-1212, 2010 WL 3975564, at *3 (N.D. Ill. Oct. 7, 2010) (citing *Int'l Truck & Engine Corp. v. DowHammond Trucks Co.*, 221 F. Supp. 2d 898, 904 (N.D. Ill. 2002)). Although the Seventh Circuit has suggested travel considerations should not be decisive, *see In re Hudson*, 710 F.3d at 719, convenience of the witnesses nonetheless remains an important consideration.

The parties focus their analysis on employee-witnesses: Plaintiff argues that Illinois is more convenient for its witnesses, yet does not identify any potential witnesses located in Illinois, beyond Plaintiff's employees. As noted above, the court gives a party's employees less weight. Plaintiff also notes that it might call a representative from the Canadian-based third-party who sent the faxes on behalf of AHC and Eskenazi. (Pl.'s Mem. at 4–5) (identifying 127 High Street, Inc., located in Vancouver, British Columbia.) But, as Plaintiff acknowledges, a Canadian-based witness will be inconvenienced regardless of the venue, and therefore, this potential witness does not counsel for or against transfer. (*Id.* at 5.) Defendants, for their part, assert that they intend to call Mr. Eskenazi, a party to the litigation, and Jan Bustamante, the

7

General Manager of AHC. (Defs.' Mem. at 5–6.) The inconvenience to Mr. Eskenazi and AHC's employee-witness is offset by the inconvenience to Plaintiff and Plaintiff's employees. The inconvenience of the parties' employees, therefore, is ultimately a neutral factor.

Although Defendants failed to identify additional third-party witnesses in their opening brief, they did identify sixteen California-based entities as potential witnesses in their interrogatory responses. (Defs.' Resp. to Interrogatories, Ex. A to Pl.'s Mem. [44-1], hereinafter "Defs.' Resp. to Interrogatories," 4–6.) When evaluating inconvenience to third-party witnesses, courts look beyond the length of a party's witness list and instead evaluate the nature and quality of the witnesses' testimony with respect to the issues of the case. *Velocity Patent LLC v. Audi of Am., Inc.*, No. 13-cv-08418, 2014 WL 4100481, *4 (N.D. Ill. Aug. 19, 2014) (citing *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1168 (N.D. Ill. 1995)). For each of these sixteen potential witnesses, Defendants declare that the witness "is expected to testify regarding its business relationship with AHC and its consent to receive faxes from AHC." (Defs.' Resp. to Interrogatories at 4–6.) This list of other fax recipients does not alter the analysis. First, the court is uncertain why such testimony would be relevant at all: testimony from businesses that did give consent to receive the faxes is unlikely to shed light on Plaintiff's claim that it received unsolicited faxes or that AHC's faxes failed to include the required opt-out notices. Second, even if some of the testimony is relevant, the testimony of all sixteen witnesses would be duplicative. Finally, insofar as one or two witnesses are called to testify, technological accommodations could be made to relieve any inconvenience. *In re Hudson,* 710 F.3d at 719. As a result, the court does not give significant weight to the convenience of these third-party witnesses. The court concludes that this factor is neutral.

\* \* \*

In sum, Defendants have not met their burden of showing that "the balance is strongly in favor of" transfer. *In re Nat'l Presto Indus., Inc.,* 347 F.3d at 664. Plaintiff has chosen its home

forum, and the inconvenience Mr. Eskenazi may experience due to his health concerns is not sufficient to disrupt this choice, particularly in light of the accommodations that are available.

## II. Public Interest

The court must also examine the interest of justice. "The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). This element "may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id.* The factors relevant to the interest of justice include: (1) the speed at which the case will proceed to trial; (2) the courts' familiarity with the applicable law; and (3) the relation of the community to the occurrence at issue and the desirability of resolving controversies in each court's locale. The court concludes that the second and third factors are neutral, and while the speed at which the case will proceed to trial lends some support for Defendants' motion, that factor alone is insufficient to justify transfer.

### A. Speed to Trial

To evaluate the speed at which a case will proceed, courts look to two statistics: "(1) the median number of months from filing to disposition for civil cases and (2) the median number of months from filing to trial for civil cases." *Juarez v. Nat'l Ry. Passenger Corp.*, No. 06-cv-3681, 2007 WL 2713357, *3–4 (N.D. Ill. Sept. 12, 2007). The court relies on the 2014 statistics from the United States District Courts National Judicial Caseload Profile.[1] There is no significant difference between the median time from filing to disposition between the two districts: 7.1 months in the Northern District of Illinois and 5.3 months in the Central District of California. The average time between filing and trial does differ: The median time from filing to trial is 35.3

---

[1] The report is available at http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2014/district-fcms-profiles-september-2014.pdf&page=1 (last viewed Jan. 22, 2105).

9

months in the Northern District of Illinois, versus only 20 months in the Central District of California. Given that TCPA cases proceed to trial infrequently, however, the court finds the statistics regarding time to disposition more relevant than the average time to trial. The difference in the time to disposition is insignificant and this factor, accordingly, does not persuade the court that transfer is appropriate here.

### B.    Familiarity with Applicable Law

The court's familiarity with applicable law is a neutral factor that weighs neither for nor against transfer. This case revolves around the requirements of the TCPA, a federal statute, which both this court and the Central District of California are equally competent to decide.

### C.    Relationship of Venue to events

As explained above, *see* Part I.B, the situs of material events is a neutral factor. Defendants' business and majority of employees are located in California and the decisions related to the fax marketing campaign took place there, but Plaintiff's injury occurred in Illinois.

## CONCLUSION

The court concludes that transferring this case would merely shift the inconvenience from Defendants to Plaintiff. Nor does the interest of justice require transfer: Though the time to trial is shorter in the Central District of California, the court affords little weight to that factor, given that TCPA cases infrequently proceed to trial. Even if the court were to give full weight to that statistic, it concludes that this single factor could not trump all other venue considerations. Defendants, therefore, have not demonstrated that transfer is appropriate in this case and the court denies Defendants' motion to transfer [33].

ENTER:

Dated: February 19, 2015

_____
REBECCA R. PALLMEYER
United States District Judge